## WILLIAMS v. WALDEN.

1. Though, ordinarily, it is to be conclusively presumed that a writing which purports to evidence a full and complete agreement embraces every stipulation assented to by the contracting parties, yet when one of them unreservedly admits in his pleadings that he in fact did assume an obligation not set forth or referred to in the writing, it is the right of the other party to disprove by parol the accompanying assertion that this obligation was fully met.
2. Where the plaintiff, in an action to rescind a contract on the ground of non-performance by the defendant of his obligations thereunder, fails to show that he has really committed a breach of his covenants, the defendant can not be prejudiced by the failure of the court to instruct the jury that a contract may be rescinded only when both parties can be restored to the condition in which they were before the contract was made.

Argued December 2, 1905.—Decided February 19, 1906.

Equitable petition. Before Judge Holden. Glascock superior court. June 1, 1905.

58

J. J. Walden instituted a proceeding against John B. Williams, with a view to rescinding a contract of sale respecting a tract of land in Jefferson county, upon which was located a mill-pond, a mill-house, and certain appurtenances. The alleged purchase-price was sixteen hundred dollars, of which amount the plaintiff claimed he had paid $1,110 and given his promissory notes for the balance, taking from Williams a bond for title. The petition contained the following allegations with regard to the terms of the contract and an alleged breach thereof on the part of the defendant: At the time of the purchase, the mill-dam was out of repair, high waters having caused a break in the same, and Williams was then engaged in making necessary repairs on the dam. It was agreed between the plaintiff and Williams that these repairs should be completed and the dam put in a first-class condition by Williams by the first day of January, 1898, when he should turn over and deliver up the mill and the tract of land, and put plaintiff in full and complete possession thereof, with the mill in good running order. About the time the repairs to the dam were being completed, the water, which had risen in the pond, washed out and destroyed the repairs, before the delivery of the mill and tract of land to plaintiff. They then met at the mill and agreed upon plans and specifications for the repairing of the mill-dam, in accordance with which Williams was to repair the dam and put it in good condition, and was to deliver the premises to plaintiff on the first day of June, 1898, with the mill in good running order; he agreeing on his part to extend the time for the completion of the repairs and the delivery of the premises to that date. Williams fails and refuses to repair the dam and deliver possession of the property under his contract, and, on account of this breach of obligation, the plaintiff has elected to rescind the contract of sale. Of this election he has given Williams due notice, and has demanded of him a return of the money paid and a surrender of the outstanding purchase-money notes, but Williams refuses to return them or to refund the money paid to him under the contract.

The defendant filed an answer which, as finally amended, set forth substantially the following defense: The agreed purchase-price for the mill property was only $1,320, of which $830 was paid by delivery to him of a note for that amount, signed by a third person, also named Walden. Defendant did not agree to

put the dam in first-class condition and the mill in good running order by January 1, 1898, and then turn over the mill and deliver up the tract of land to plaintiff. Defendant had already delivered possession of the premises to the plaintiff, and the former "was only to repair said dam, which he did do, and when done plaintiff inspected and accepted same as full completion" of the defendant's contract, in so far as the making of repairs on the dam or mill was concerned. Subsequently the plaintiff "stopped the water on said dam and held the same so long thereon that it went beyond the strength and capacity of said dam, and thereby it broke and washed out again, without any fault whatever on the part" of the defendant. This did not occur before delivery of the premises to the plaintiff, as he alleges; nor did defendant, after the dam was washed away, enter into any agreement with the plaintiff with regard to replacing it and putting the mill in good running order. On the contrary, defendant complied with his original undertaking to repair the dam, and fully completed his contract, and delivered to plaintiff all of the property, which was taken and accepted by the latter. Having thus complied with all of his obligations, defendant is entitled to judgment on such of the purchase-money notes held by him as are due or may become due pending the litigation, and to a special lien on the land for the unpaid purchase-money.

A trial was had on the merits, and the jury returned a verdict in favor of the plaintiff. The defendant made a motion for a new trial, in one of the special grounds of which he complained that the court erred in allowing the plaintiff to testify: "When I traded for this mill property, the dam was washed away and the defendant was repairing it. He agreed to build a tumbling dam, complete it by 1st of January following, and give me possession by that date. He did not build this dam and deliver this property to me as he agreed to." This testimony was objected to on the ground that the contract of sale was in writing, being evidenced by the notes given by the plaintiff for the purchase-money and by a bond for title made to him by the defendant, and that the written contract of purchase could not be added to or varied by parol. Further complaint was made that the court failed to instruct the jury that the rescission of a contract could not be decreed unless both parties could be restored to the condition in which they were before the contract was made, such a charge being essential in presenting to

the jury the law bearing upon a vital issue in the case. The motion for a new trial was overruled, and the defendant excepted to this judgment. The motion contained one other special ground, but it was abandoned on the argument before this court.

*B. F. Walker* and *James K. Hines,* for plaintiff in error.

*E. P. Davis* and *R. L. Gamble,* contra.

EVANS, J. (After stating the facts.) 1. It is not to be questioned, that, as an almost universal rule, where the parties to a contract have reduced to writing what appears to be a complete and certain agreement, it is to be conclusively presumed that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or stipulations is inadmissible to add to, take from, or vary the written instrument. *Bullard* v. *Brewer,* 118 *Ga.* 918. In the present case, however, the defendant voluntarily conceded in his answer, that, under the contract between himself and the plaintiff, he was obligated to repair the dam, notwithstanding there was no stipulation to this effect in the writings evidencing the contract; and on the trial he testified that prior to the negotiations between them the dam had been practically all washed away, and he had started to replace it, having made a contract with Gus and John L. Williams to rebuild the same for the sum of $87.50. The defendant further admitted, that when trading with Walden, he told him he could have all his rights under this contract; that the plaintiff could have these contractors finish the dam, and that he (defendant) would pay them the balance which he would owe them on their contract for building and repairing the dam. In view of the solemn admission in judicio which the defendant made in his answer, we are of the opinion that he estopped himself from insisting that the writings which passed contained no reference to the obligation he had assumed with respect to putting the dam in repair, and from contending that the plaintiff was not at liberty to testify as to whether or not this obligation had been met. It appeared, from the defendant's evidence, that he had contracted with the persons who were to repair or replace the dam that they should erect what was known as a "tumbling" dam, such being the character of the dam which had previously been washed away. Considered in the light of these facts, the testimony of the plaintiff to which objection was made did not have the effect of engrafting

upon the written contract any stipulation or obligation on the part of the defendant which he did not admit he had assented to and assumed, but simply amounted to a denial of his contention that he had fully complied with his recognized obligation to place the dam in a state of repair and usefulness. Accordingly, we conclude that the admission of the testimony objected to did not afford cause for granting a new trial.

2. Our Civil Code, § 3712, expressly provides that one party to a contract can elect to rescind it because of non-performance by the other party of his covenants, "only when both parties can be restored to the condition in which they were before the contract was made." But the failure to so charge in the present case did not operate to the prejudice of the defendant, since this rule is not applicable except in a case where the party claiming a right to rescind establishes by proof that the other party did not comply with his obligations. The plaintiff had not established his alleged right to treat the contract as rescinded, and therefore a charge based upon the assumption that he had would have worked no benefit to the defendant. His real cause of complaint is that the court did not grant a new trial on the ground that the evidence did not warrant a finding in favor of the plaintiff.

The evidence introduced in behalf of the defendant disclosed that he employed, as contractors, Gus and John L. Williams to rebuild the dam, stipulating that they were to do the work according to certain specifications. The slanting part of the dam, next to the water, was to be sheeted with boards, which were to be covered with dirt for the space of three or four feet from the bottom; when the dam was sheeted and this dirt put on the boards, the water was to be turned on until it rose a foot on this dirt, and then lowered; then it was to be turned on and allowed to rise two feet, and then turned off again; and so on, until the dirt and dam had fully settled and the dam was tested. If this were not done, the dam would be sure to wash out when a full head of water was turned on. The breast-boards were to be put on without nailing them, so they could be instantly taken off in the event any leak should spring when the water was turned on. One of the contractors, Gus Williams, testified that the defendant particularly instructed them to put dirt on the planks which covered the frame of the dam, which slanted toward the water, the dirt to be put on

for three or four feet from the bottom of the dam; and that the defendant also cautioned them with regard to testing the dam in accordance with his instructions as to turning on the water. This witness further testified that after the sheeting had been put on, but before any dirt had been placed on the plank at the bottom of the dam, as directed by the defendant and as done on all tumbling dams, Walden told witness to turn the water on—that he wanted a head of water, so he could grind the following Monday. The witness told Walden what the defendant had said about turning the water on, and about the contract to put dirt on the dam; but Walden replied that the defendant had nothing to do with the mill any more, that he had bought it, and that he would take the risk; whereupon the witness told him all right, if he would stand between him and John B. Williams, and Walden said he would, and ordered the water turned on, notwithstanding witness warned him of the danger. They then turned the water on, and during the succeeding night the dam was washed out, as witness had predicted. The other contractor, John L. Williams, testified to the same effect, regarding the instructions given by the defendant as to how the dam should be constructed and tested, and added that Walden had ordered the breast-boards to be nailed on, notwithstanding he was told of defendant's instructions to the contrary, saying the property was his and he had charge of it, and ordering witness to put in plenty of nails, as defendant was furnishing them. Opposed to this evidence was the testimony of the plaintiff, who denied that he had ordered the breast-planks nailed on, or had told Gus Williams to turn the water on, as it was his property and he would take the risk, or that he had said he wanted a head of water by Monday morning, so he could go to grinding. The plaintiff admitted, however, that he was at the mill on Saturday before the night of the washout, and was at work helping Gus Williams finish the dam, and that he (plaintiff) had "told him John B. Williams said to turn the water on." The plaintiff did not undertake to assert that, in point of fact, the defendant, John B. Williams, had authorized him or any one else "to turn the water on," nor did the plaintiff offer any explanation with regard to the statement he admitted having made to Gus Williams. The defendant testified that the water was turned on in violation of his express instructions to the contractors, and that he knew nothing about the matter till

after the dam had been washed out during the night of Saturday, January 8, 1898. Unless he did direct that the water should be turned on, despite the incompletion of the dam and the danger attending such a course, or one of the contractors wrongfully did so of his own motion, the defendant would certainly not be responsible for the consequences. According to the evidence, as it appears in the record before us, the plaintiff was alone responsible for the loss of the dam, and by his conduct relieved the defendant of any obligation he may have assumed in reference to the rebuilding of the dam. The plaintiff swore, that on the morning after the new dam was thus destroyed, he went to the defendant and told him he did not want the property, as the defendant had failed to complete the dam by January 1, as he had agreed to do; that after talking over the matter for some time, it was agreed that they should meet at the mill the next day and see what could be done; and on the following day plaintiff finally consented to keep the property if the defendant would build a block dam, completing it by June 1st; that the defendant agreed to this proposition, but never did anything toward carrying out his agreement; and that on June 1st plaintiff told him the mill was his and demanded that he pay back the money paid to him under the contract. With equal positiveness the defendant swore that he never entered into any such agreement. Whatever may be the truth in this regard, the fact remains that the defendant had been fully relieved by the conduct of the plaintiff from taking any further steps to replace the dam; and even if the defendant did in fact agree to thereafter construct a block dam, his undertaking to do so was a mere nude pact, being wholly without any consideration.

It may be that on another hearing the plaintiff will be able to offer some reasonable explanation of his statement to one of the contractors that the defendant had "said to turn the water on" the uncompleted dam, contrary to his previous positive directions not to do so till sufficient dirt had been placed on the plank near the bottom, and then in such a way only as to observe the precautions he had particularly instructed them not to neglect. But as the case now comes to us, we are constrained to hold that the jury was not warranted in returning a verdict in favor of the plaintiff.

*Judgment reversed. All the Justices concur, except Atkinson, J., who did not preside.*